# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MICHAEL JOHNSON     *

Plaintiff     *

v     *     Civil Action No. JFM-09-3445

JAMES FLOOD, *et al.*     *

Defendants     *

   ***

## MEMORANDUM

Pending is defendants' motion to dismiss or for summary judgment. ECF No. 16. Although he was advised of his right to file a response in opposition to defendants' motion and of the consequences for failing to do so, plaintiff has not opposed the motion with an affidavit or other evidence. *See* ECF No. 17. For the reasons that follow defendants' motion, construed as a motion for summary judgment, shall be granted.

## Background

Plaintiff alleges he was assaulted on August 20 or 21, 2009, by defendant S. Bell, a correctional officer at Patuxent Institution, while plaintiff was undergoing treatment at the Howard County Hospital. He claims Bell hit him in the chest with a handgun and that pictures were taken of his injuries. On the same day of the assault plaintiff claims Bell told "two white assistant[s]" that nothing was wrong with plaintiff and made discriminatory statements regarding him. He further alleges that Warden Johnson and defendant Butler, Patuxent's security chief, covered up the incident with false reports. ECF No. 1 at Attachment 1, p. 4.

Plaintiff also alleges Bell assaulted and threatened him in September or October, 2009. He claims Bell came to the infirmary at Jessup Correctional Institution (JCI) and told plaintiff he would kill him if he talked; that no one would believe him; and the "system always stick

together." Plaintiff states Bell then gave him "the finger." ECF No. 1 at Attachment 1, p. 5.

On December 15, 17 and 19, 2009, plaintiff states Bell hit him with a "body blow" and struck him in the back of the neck. He further claims that Bell was assisted by unknown officers and acting under the orders of Captain Staten. He further claims they tried to force him to stand up in the shower when he was suffering a back and neck injury, and put handcuffs on "broken hands." Plaintiff claims Staten then ordered the removal of all pens and legal documents from his cell. He states Staten convinced a doctor to allege that plaintiff was using pens as weapons in order to justify the confiscation. *Id*. at pp. 5—6.

On December 19, 2009, plaintiff claims Bell and an unknown officer attacked him. He claims after the assault, Staten ordered the removal of all pictures from the walls of his cell. Additionally, he claims Staten watched the assault as it occurred. Plaintiff states that Bell worked overtime on December 19th and came to his cell with another officer stating, "nigger we gonna (sic) kill you. A inmate is nothing. Tell the white man I said this. Fuck him and you. Put that in your lawsuit." He claims Lt. Thomas "immediately took him off tier" and forced handcuffs on plaintiff's broken arm. He further claims false reports were written to cover up the incident and that unnamed inmates witnessed the incident. *Id*. at p. 7.

**Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this

standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the

3

response.  *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force.  *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010).  The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm.  *Wilkens,* 130 S. Ct. at 1177.

Defendants deny that plaintiff was assaulted as alleged in the complaint. They explain that on August 20, 2009, plaintiff was discovered sitting on the bed in his cell with a homemade noose tied around his neck. ECF No. 16 at Ex. 2.  Plaintiff was unresponsive when his name was called and, upon being stabilized, was moved to another cell and placed on suicide watch.  The following day, plaintiff was transported via ambulance to Howard County Emergency because he was found unresponsive with an irregular heartbeat.[1]  *Id*. at Ex. 3.  Officers J. Johnson and S. Bell accompanied plaintiff in the back of the ambulance along with two emergency medical technicians who present at all times.  *Id*. at Ex. 4.  Bell stayed at the hospital until relief officers arrived.  He denies assaulting plaintiff and states he was never left alone with plaintiff.

Plaintiff's allegation was investigated.  He claimed he was partially blind, able to see only bright light and shadows, but could see fine before he came to the hospital.  In addition, plaintiff had a large bruise on his chest that could not be explained. Plaintiff told Lt. Wilmering, who was investigating the claims, that he wanted to die, had offered officers a bribe to kill him, and asked Wilmering to order the officers to kill him.  Wilmering explained he could not do that and plaintiff related that he had removed his IV line before Wilmering's arrival in the hope that he would bleed to death.  Plaintiff claimed the assault by Bell occurred in the Emergency Room

---

[1]  Plaintiff has a seizure disorder.  ECF No. 16 at Ex. 3, p. 6.

on August 21, 2009, and Bell hit him in the chest with a gun while Johnson held the rounds. In addition, plaintiff described how Bell had wrapped his speed-loaders in a towel[2] and used them to beat plaintiff's foot. Bell related that five different hospital staff members came into plaintiff's room to speak with him, but he did not respond. Bell, Johnson and a nurse who was on duty in the Emergency Room stated that plaintiff was unresponsive when he was there. Officer Brown, who relieved Bell and Johnson, stated plaintiff was unconscious on August 21, 2009. ECF No. 16 at Ex. 5.

With respect to the allegations of assault during December 2009, defendants state plaintiff was housed in the Mental Health Unit. On December 13, 2009, plaintiff complained of having chest pains, but when Nurse Williams checked his vital signs they were normal. Plaintiff then asked to use his inhaler and refused to return it. When Officer Nwofor gave plaintiff a direct order to return the inhaler, he became irate and threw a cup of suspected urine in her face. ECF No. 16 at Ex. 6. In an x-ray report dated December 13, 2009, it was noted that there was no evidence that plaintiff's hand was broken or fractured. *Id*. at Ex. 7, p. 6.

Officer Staten denies working at Patuxent on December 15, 16, and 17, 2009, and denies participating in an assault on plaintiff. She further states that on December 19, 2009, plaintiff was required to shower with his hands cuffed in front of him because he was on segregation status due to his abusive behavior toward staff. She admits that pens were removed from plaintiff's cell as well as pictures and papers. The pictures and papers were posted by plaintiff on the cell walls in violation of institutional rules. *Id*. at Ex. 8. The pens were removed because plaintiff was blowing metal strips through the clear outer shell of the pen to kill roaches. *Id*. at

---

[2] Plaintiff also claimed he was struck in the foot with the waist chain used to restrain him. ECF No. 16 at Ex. 5, p. 17.

Ex. 9. Plaintiff was provided pencils in lieu of pens as a result of the incident.

On December 18, 2009, plaintiff demanded a chair to sit in while he showered and became very agitated when his demands were not met. Plaintiff was told that having a chair was not required by his medical conditions and, because he had a history of violent attacks against staff, his request would be denied. Plaintiff then refused to come out of the shower, taunting officers to come and get him. Once several officers arrived on the scene, plaintiff voluntarily stepped into the shower, showered, and was escorted back to his cell without further incident. ECF No. 16 at Ex. 10.

With respect to the confiscation of papers inside of plaintiff's cell, defendants explain that on December 18, 2009, officers came to plaintiff's cell to perform a routine search. Initially plaintiff refused to allow officers into his cell for the search, but upon arrival of an extraction team he complied with orders. During the search it was discovered that plaintiff had stuffed papers into the toilet, plastered papers on the walls, and possessed a broken ink pen which could be fashioned into a weapon. The papers and the broken pen were removed. In addition, a broken wrist cast as well as a torn neck brace were found and confiscated. *Id.* at Ex. 11. No force was used during the search.

Based upon the undisputed evidence, there is no genuine dispute of material fact warranting a trial regarding any of plaintiff's claims. Defendants are entitled to summary judgment in their favor, which shall be entered by separate order which follows.

| December 14, 2010 | /s/ |
|---|---|
| Date | J. Frederick Motz<br>United States District Judge |